UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BRYCE THOMAS DANIELS,        )
                                      )
               *Plaintiff*        )
                                      )
        v.                 )      Cause No. 3:22-CV-698-RLM-JEM
                                      )
UNIVERSITY OF NOTRE DAME,    )
                                      )
            *Defendant.*    )

<u>ORDER</u>

Bryce T. Daniels brings several claims against the University of Notre Dame arising from his dismissal and disciplinary action from University of Notre Dame Law School. Mr. Daniels alleges multiple claims: 1) gender discrimination under Title IX; 2) Disability Discrimination under the Americans with Disabilities Act; 3) disability discrimination under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; 4) breach of contract; 5) estoppel and reliance; 6) negligence; 7) negligent infliction of emotional distress; and 8) declaratory judgment that Notre Dame breached its contract with him, and injunctive relief.

Notre Dame moved to dismiss under Federal Rules of Civil Procedure 8(a) and 12(b)(6) because Mr. Daniels's complaint doesn't plausibly suggest that Mr. Daniels is entitled to relief. For the reasons below, the court grants in part and denies in part Notre Dame's motion to dismiss.

1

LEGAL STANDARD

To survive a motion to dismiss the complaint must "state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A plaintiff must plead particularized factual content, not conclusory allegations, that allows the court to plausibly infer the defendant is liable for the alleged misconduct. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

Although the court is generally limited to the pleadings to decide a motion to dismiss, the court may consider documents attached to the pleadings so long as the documents are referred to in the complaint and central to the plaintiff's claims. *See* Adams v. City of Indianapolis, 742 F.3d 720, 729 (7th Cir. 2014). Notre Dame attached policies and correspondence to its reply brief that were referenced and quoted repeatedly throughout Mr. Daniels's amended complaint and are central to Mr. Daniels's dismissal and disciplinary action. The court considers them in deciding the motion to dismiss.

THE AMENDED COMPLAINT

Mr. Daniels challenges the circumstances of his dismissal and disciplinary action from the University of Notre Dame Law School. Mr. Daniels was a law student at Notre Dame when the trouble began in October 2021. Notre Dame received multiple reports about Mr. Daniels's conduct. Jane Doe made one of those reports. Some reports contained concerns about Mr. Daniels's wellbeing and concerns that he might harm others. There had been reports that Mr.

2

Daniels had a firearm and had threatened to harm himself and others. Jane Doe filed a Title IX complaint against Mr. Daniels.

Notre Dame's Title IX office notified Mr. Daniels that a Title IX complaint had been filed against him, and the Notre Dame Police Department questioned him. After the questioning, Erin Oliver of Notre Dame's Title IX program and the student manager of the law school informed Mr. Daniels that he was dismissed via emergency procedures from the law school. They also informed him of his right to appeal the dismissal within five days. At that time, Mr. Daniels agreed to be admitted into psychiatric treatment after feeling like he had no other choice because he believed his level of cooperation would affect the outcome of his appeal of the emergency dismissal. Mr. Daniels remained at the psychiatric facility for five days. His appeal was due the day after his release, and he submitted a timely appeal.

On November 15, 2021 Mr. Daniel's appeal of his emergency removal was affirmed, but the Title IX complaint alleging sexual misconduct was dismissed on November 23, 2021. Notre Dame left a no contact order in place. Notre Dame then started another investigation against Mr. Daniels through the Office of Community Standards for other alleged violations of Notre Dame's standards of conduct. Mr. Daniels repeatedly reached out to the Office of Community Standards for an update on his conduct investigation. After five months, Mr. Daniels met with the Office of Community Standards via Zoom. The director of the Office of Community Standards admitted that there was delay in the conduct investigation process and had no explanation for the delay. In the meantime,

3

apparently, Mr. Daniels filed a separate Title IX complaint against Jane Doe. The amended complaint leaves unclear when the Title IX complaint was filed, but Notre Dame dismissed the Title IX complaint against Jane Doe and referred it to the Office of Community Standards for further review.

Mr. Daniels says that the Office of Community Standards sent Mr. Daniels a letter after the meeting that included notification that he would be entitled to review the allegations against him in a pre-hearing meeting with the office, and notification of a hearing date – April 8, 2022. The date was set to ensure Jane Doe's participation.

Mr. Daniels alleges that had a pre-hearing meeting with the director of the Office of Community Standards. At that meeting Mr. Daniels reviewed the allegations against him and learned that the burden of proof was by the preponderance of the evidence. The hearing was ultimately moved to April 22, 2022 to accommodate Jane Doe's appearance at the hearing. Mr. Daniels alleges that the director of the Office of Community Standards told him about Jane Doe's testimony, and they (Mr. Daniels and Ms. Doe) generally agreed on the facts of what happened between them.

Jane Doe didn't appear for the hearing. Mr. Daniels testified, and he called a witness to testify on his behalf. After the hearing in front of a panel, Mr. Daniels alleges that the Office of Community Standards provided him with an opportunity to submit reflection prompts to supplement his testimony – though later than the office said it would.

4

The panel decided that Mr. Daniels violated the University Standard of Conduct. Mr. Daniels alleges that the hearing panel determined that there wasn't merit to concerns about violence. As a result, Mr. Daniels was required to do the following to be eligible to reapply to Notre Dame: 1) participate in two discussions with the director of the Office of Community Standards to discuss ways to comply with the Standards of Conduct; 2) meet with the student manager at the law school to discuss his development as a successful student at the university; and 3) establish a relationship with a licensed psychologist.

Mr. Daniels reached out to the Office of Community Standards to notify it that there were false factual conclusions in the decision letter– the office agreed to change them but apparently never did so. Mr. Daniels alleges that the student manager at the law school told him he wouldn't be able to return to the law school in the fall because the admission deadline had passed. He also alleges that the student manager badgered him because he wouldn't accept responsibility for the allegations against him. She ultimately didn't certify that they had the meeting because she didn't think Mr. Daniels was taking the meeting seriously and wouldn't apologize. Mr. Daniels contacted the law school dean to seek an exception to readmission, but the dean denied Mr. Daniels's request.

Lastly, Mr. Daniels's amended complaint against Notre Dame includes multiple allegations related to publicity surrounding Notre Dame's Title IX office and the way Notre Dame has handled female students in sexual assault cases. Mr. Daniels alleges that the public scrutiny directed towards Notre Dame has

5

created a system and enforcement that minimizes the rights of male students and creates a system to ensure that female accuser's complaints be acted on and found credible no matter their veracity.

*Count I- Title IX Gender Discrimination*

Mr. Daniels's first claim against Notre Dame alleges that Notre Dame discriminated against Mr. Daniels by depriving him of attending Notre Dame on the basis of sex through alleged discriminatory, gender-biased implementation of university policies. Mr. Daniels also alleges that Notre Dame discriminated against him when it punished him – dismissal from Notre Dame – for violating university policy.

"No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has interpreted Title IX to provide individual plaintiffs with an implied private right of action to pursue claims of gender discrimination in federal court and has recognized many claims that constitute discrimination. Cannon v. University of Chicago, 441 U.S. 677, 689, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

A Title IX discrimination claim requires a plaintiff to allege (1) the educational institution received federal funding, (2) the plaintiff was excluded from participation in or denied the benefits of an educational program, and (3) the educational institution in question discriminated against plaintiff based on

6

gender. *See* Doe v. Purdue University, 928 F.3d 652, 657 (7th Cir. 2019). The parties don't dispute that Notre Dame received federal funding or that Mr. Daniels was denied the benefits of an educational program, but focus on whether Notre Dame discriminated against Mr. Daniels because of his gender. The question for the court is whether the alleged facts raise a plausible inference that the university discriminated on the basis of sex.

Notre Dame argues that Mr. Daniels's Title IX discrimination claim should be dismissed because he wasn't dismissed from Notre Dame for violating a non-Title IX standard of conduct. Mr. Daniels responds that it doesn't matter if he wasn't technically dismissed through the Title IX procedure. He claims that all of the university procedures that led to his dismissal were connected to the Title IX process.

Mr. Daniels asserts his Title IX discrimination claim with a backdrop of several critiques of Notre Dame's management of sexual violence. Mr. Daniels pleads that Notre Dame has been included in multiple published articles, documentaries, and other forms of critical media of Notre Dame's investigation of sexual assaults and other sexual violence. Mr. Daniels alleges that the media pressure has caused Notre Dame to "'overcorrect' any perceived deficiencies in investigating Title IX complaints." [Doc. No. 12, ¶ 115]. He alleges that Notre Dame "has created an environment of hostility toward accused male students" and ensures that "female accuser's complaints would be acted upon and found credible, even in dubious cases. . ." [Doc. No. 12, ¶116]. *See e.g.,* Doe v. Columbia University, 831 F.3d 46, 58 n.11 (2d Cir. 2016) ("A covered university that

adopts, even temporarily, a policy of bias favoring one sex over the other in a disciplinary dispute, doing so in order to avoid liability or bad publicity, has practiced sex discrimination, notwithstanding that the motive for the discrimination did not come from ingrained or permanent bias against that particular sex."). Such a background isn't enough to plead gender discrimination on its own. Doe v. Purdue University, 928 F.3d 652, 668 (7th Cir. 2019), *holding modified by* Doe v. Samford University, 29 F.4th 675 (11th Cir. 2022). Mr. Daniels's dismissal was due to a violation of the code of student conduct, not based on sexual misconduct under Title IX. According to the pleadings, the Office of Community Standards – and not the Title IX office – dismissed Mr. Daniels from Notre Dame and implemented conditions for readmission to Notre Dame. The court considers this alongside Mr. Daniels's other allegations.

Helpful guidance is found in Doe v. Purdue University, 928 F.3d 652, 669 (7th Cir. 2019). In Doe v. Purdue University, a student who was dismissed from the university for sexual assault brought a Title IX discrimination claim against Purdue University. The court of appeals denied the university's motion to dismiss the Title IX claim because the student alleged enough facts to create a plausible claim that he was treated differently than his female counterparts. He alleged that the university's Title IX office had been recently scrutinized, and that the university was financially motivated to discriminate against the male student plaintiff. The court of appeals held that this general outside pressure was relevant in evaluating plausibility in a Title IX claim.

But in Mr. Daniels's case, the outside pressure he claims affected Notre Dame's decision-making process is only minimally relevant. Mr. Daniels was withdrawn from Notre Dame in November 2021 because Notre Dame received multiple reports that Mr. Daniels was a harm to himself and others, not because Notre Dame found the Title IX complaint against him substantiated. The Office of Community Standards dismissed Mr. Daniels from Notre Dame for communicating with a female student after being asked to stop and implemented conditions for readmission to Notre Dame. The allegations containing examples or motivations of outside pressure to treat male sexual assault or violence allegations differently than female sexual assault or violence allegations do little to create a plausible Title IX claim because Mr. Daniels's claims don't rest on his dismissal from Notre Dame due to a Title IX complaint.

Doe v. Purdue University also considered allegations the dismissed student claimed raised the inference that Purdue acted at least partly on the basis of sex. The court of appeals held that the student alleged sufficient facts that raise a plausible claim: 1) the university decided to credit the female student's account of the incident without speaking with her; 2) the university provided only that it "found Jane credible and John not credible" as justification for dismissal; 3) the majority of the panel members appeared to credit the female student based on her accusation alone and didn't consider other evidence; 4) the panel didn't read the investigative report and didn't speak with the male student; and 5) hostility towards the male student. Doe v. Purdue University, 928 F.3d at

9

669. These facts, taken together, raised a plausible inference that he was denied an educational benefit on the basis of his sex.

Mr. Daniels points to examples in his adjudication process that he believes show sex discrimination. He alleges that Notre Dame dismissed his Title IX complaint against Jane Doe and continued an investigation against him. But this can't support a plausible Title IX discrimination claim. Jane Doe's Title IX complaint against him was dismissed and so was his Title IX claim against Jane Doe. Further, after Mr. Daniels's Title IX complaint against Jane Doe was dismissed, it was referred to the Office of Community Standards – the exact process as Jane Doe's complaint against him.

Mr. Daniels claims that Notre Dame didn't pursue an investigation against Jane Doe for her "willful and deliberate omissions from statements made to the NDPD and Title IX regarding the full context of their interactions violated the Policy and community standards, with no action taken against Jane." [Doc. No. 12, ¶105]. In other words, Mr. Daniels alleges that Notre Dame is selective on the basis of sex in enforcing its standards of conduct. Mr. Daniels alleges that Jane Doe, a female, violated various Notre Dame policies –omitting details to the Notre Dame police and Title IX office – and Notre Dame treated her violations differently than Mr. Daniels's violations because she is female. [Doc. No. 12, ¶¶105, 139]. On this basis alone, Mr. Daniels does enough to plead a plausible Title IX discrimination claim.

The court echoes the court of appeals' warning in Doe v. Purdue University: Mr. Daniels "may face problems of proof, and the factfinder might not

buy the inferences that he's selling." 928 F.3d 652, 669 (7th Cir. 2019). However, Mr. Daniels's complaint creates a plausible inference of discrimination and Notre Dame's motion to dismiss on Mr. Daniels's Title IX claim must be denied.

*Count II-Disability Discrimination under the Americans with Disabilities Act and Count III- Failure to Accommodate under Section 504 of the Rehabilitation Act*

Notre Dame argues that Mr. Daniels's disability claims should be dismissed for failure to state a claim because Mr. Daniels hasn't alleged a disability substantially limiting a major life activity, and that Mr. Daniels hasn't alleged a causal connection between his disability and an adverse action.

"In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." Novak v. Bd. of Trustees of S. Ill. University, 777 F.3d 966, 974 (7th Cir. 2015). Similarly, to establish a prima facie failure to accommodate claim (Section 504), Mr. Daniels must show that: (1) Mr. Daniels was a qualified individual with a disability; (2) Notre Dame was aware of his disability; and (3) Notre Dame failed to reasonably accommodate his disability. E.E.O.C. v. AutoZone, Inc., 809 F.3d 916, 919 (7th Cir. 2016).

Mr. Daniels pleads that he was denied the ability to continue admission at Notre Dame Law School because he was found to be in violation of Notre Dame

11

student conduct policy, not because of a disability.[1] The court needn't consider whether Mr. Daniels properly pleads that he suffers from a statutory disability, because Mr. Daniels doesn't plead that he was denied participation or admission to Notre Dame due to a disability. As Mr. Daniels states himself, he was withdrawn from Notre Dame via emergency procedures because Notre Dame found Mr. Daniels to be a threat to himself and to others, and he was later disciplined for communicating with Ms. Doe. Notre Dame found this conduct under the circumstances, to be in violation of their student conduct policies.

The claims couldn't survive even if Mr. Daniels alleged that he engaged in the dismissal conduct due to his mental health. Discipline for student misconduct allegedly caused by a disability isn't an adverse action under the ADA. Brumfield v. City of Chicago, 735 F.3d 619, 630-631 (7th Cir. 2013); Despard v. Bd. of Trustees of Indiana University, No. 1:14-CV-1987-WTL-DML, 2015 WL 4946112, at *8 (S.D. Ind. Aug. 18, 2015). Mr. Daniels directly alleges that he was subject to emergency withdrawal from Notre Dame because Notre Dame thought he was a danger to himself and others, and subject to conditions for readmission due to improper communication with Jane Doe. Mr. Daniels has

---

[1] Mr. Daniels argues in his response brief that Notre Dame engaged in a discriminatory adverse action when he was functionally coerced into a mental hospital. [Doc. No. 19, ¶22]. The amended complaint alleges that the adverse actions supporting the Counts II and III disability claims were Notre Dame's finding that he violated Notre Dame policy, dismissing him from school, threatening to arrest him if he entered Notre Dame property, and imposing discriminatory conditions upon his readmission to the university. [Doc. No. 1, ¶¶ 145, 152]. The court is limited to the pleadings – not new facts or allegations in a response brief –  to determine whether Mr. Daniels stated a plausible claim.

pleaded himself out of court on the disability claims related to his dismissal because his complaint alleges that Mr. Daniels was disciplined based on violations of university policy and via university procedures, not because of a disability.

Lastly, Mr. Daniels's complaint doesn't include any request for accommodation. There is no failure to accommodate claim if the plaintiff hasn't requested an accommodation. Stelter v. Wisconsin Physicians Serv. Ins. Corp., 950 F.3d 488, 491 (7th Cir. 2020). The Americans with Disabilities Act doesn't require Notre Dame to accommodate a student in a way that would cause an end run around student conduct standards. *See e.g.*, Castelino v. Rose-Hulman Inst. of Tech., 999 F.3d 1031, 1039 (7th Cir. 2021). As a result, the court grants Notre Dame's motion to dismiss Count II and Count III of Mr. Daniels's complaint.

*Count IV-Breach of Contract*

Notre Dame argues that Mr. Daniels's breach of contract claim should fail under Indiana law because Notre Dame's lack of adherence to their policies isn't a breach of contract because the departure from the policies wasn't arbitrary or in bad faith.

In Neel v. Indiana University Board of Trustees, 435 N.E.2d 607, 610 (Ind. Ct. App. 1982), the Indiana Court of Appeals characterized the legal relationship between a student and a university as one of implied contract. The Indiana Court of Appeals explained that, although courts have analyzed the relationship under many different legal doctrines, "[t]he most pervasive and enduring theory is that

13

the relationship between a student and an educational institution is contractual in nature. The terms of the contract, however, are rarely delineated, nor do the courts apply contract law rigidly." Id. at 610. It is generally well accepted that the catalogues, bulletins, circulars, and regulations of a university made available to the matriculant become of part of the contract. *See* Chang v. Purdue University, 985 N.E.2d 35, 46 (Ind. Ct. App. 2013); Ross v. Creighton University, 957 F.2d 410, 416 (7th Cir.1992). Mr. Daniels has sufficiently pleaded an implied contract through his status as a student at Notre Dame. Mr. Daniels paid tuition as a student and Notre Dame implied various policies and codes of conduct that all students must adhere to.

It is also well settled Indiana law that before a court will intervene into the implied contractual relationship between student and university, there must be some evidence that the university acted arbitrarily or in bad faith. *See* Neel v. Indiana University Board of Trustees, 435 N.E.2d at 613; Gagne v. Trs. of Ind. University, 692 N.E.2d 489, 496 (Ind. Ct. App. 1998); Cordova v. University of Notre Dame Du Lac, No. 3:11-CV-210 RM, 2011 WL 6257290, at *5 (N.D. Ind. Dec. 13, 2011). Not every departure from a school policy constitutes a breach of contract claim; Mr. Daniels must plead sufficient facts to show that Notre Dame acted arbitrarily or in bad faith.

Notre Dame argues that Mr. Daniels's breach of contract claim is like the breach of contract claim in Sung Park v. Indiana University School of Dentistry, 692 F.3d 828, 830 (7th Cir. 2012). In Sung Park, the court of appeals found that the plaintiff's breach of contract claim should be dismissed because the

14

university's failure to adhere to its disciplinary policies wasn't enough to create a plausible breach of contract claim. Instead, the plaintiff needed to offer some indication that the decision was made arbitrarily or in bad faith. Unlike the plaintiff student in Sung Park, Mr. Daniels does provide plausible allegations that Notre Dame acted arbitrarily or in bad faith. Mr. Daniels alleges multiple examples of Notre Dame's arbitrary enforcement of its policies.

Mr. Daniels alleges that he repeatedly contacted the Office of Community Standards for updates on his case for several months without response, that he was told that he could face his accuser, but she didn't attend the hearing without explanation, and that the Office of Community Standards arbitrarily enforced Notre Dame policies against the Mr. Daniels, but not Jane Doe. Mr. Daniels also says that when trying to complete the requirements for readmission, he was denied completion of the requirement after the law school representative refused to believe his side of the story.

Although Mr. Daniels's allegations that Notre Dame deviated from its policies aren't enough to allege a breach of contract claim, allegations of arbitrariness and bad faith deviating from the policies are enough to create a plausible breach of contract claim. The court denies Notre Dame's motion to dismiss the breach of contract claim.

*Count V-Estoppel and Reliance*

Notre Dame argues that Mr. Daniels's promissory estoppel claim should be dismissed because Indiana law doesn't recognize claims of estoppel created

by school policies, including Title IX policies. Mr. Daniels claims that he relied on the various university policies before enrolling at Notre Dame and while he was a student.

Under Indiana law, a claim of promissory estoppel consists of five elements: "(1) a promise by the promisor (2) made with the expectation that the promisee will rely thereon (3) which induces reliance by the promisee (4) of a definite and substantial nature and (5) injustice can be avoided only by enforcement of the promise." Sterling Commer. Credit — Mich., LLC v. Hammert's Iron Works, Inc., 998 N.E.2d 752, 757 (Ind. Ct. App. 2013).

Indiana law doesn't provide that school policies constitute the kind of unambiguous promise required to support an estoppel claim. *See e.g.*, Higginbottom ex rel. Davis v. Keithley, 103 F. Supp. 2d 1075 (S.D. Ind. 1999); *see also* Doe v. Columbia College Chicago, 299 F. Supp. 3d 939, 961 (N.D. Ill. 2017). Indiana law has been clear that an implied contract exists between student and university, and there isn't an instance in which a court applying Indiana law recognized a promissory estoppel claim in this context. Higginbottom ex rel. Davis v. Keithley, 103 F. Supp. 2d 1075, 1083 (S.D. Ind. 1999). Further, Mr. Daniels doesn't allege any facts to show that he would've attended a different school or not attended Notre Dame because of any representation in a Notre Dame policy. The court grants Notre Dame's motion to dismiss the promissory estoppel claim.

*Count VI- Negligence*

Notre Dame argues that Mr. Daniels states no Indiana negligence claim because Indiana law doesn't impose a duty on Notre Dame to exercise reasonable care to its students in selecting, supervising, and training its employees within the student disciplinary process and enforcement of university policy. Mr. Daniels argues that his theory of liability – Notre Dame was negligent in selecting, supervising, and training university employees causing Mr. Daniels damage – can be recognized under Indiana law.

To recover on a negligence claim, a plaintiff must establish three elements: "(1) a duty on the part of the defendant to conform its conduct to a standard of care arising from its relationship to the plaintiffs; (2) the defendant's failure to conform its conduct to the requisite standard of care required by the relationship; and (3) injury to the plaintiffs proximately caused by the defendant's breach of its duty." Holt v. Quality Motor Sales, Inc., 776 N.E.2d 361, 365 (Ind. App. 2002). Notre Dame's argument centers around the first of these elements – that Indiana law doesn't recognize a special relationship between Mr. Daniels and the university to establish a duty.

"Absent the existence of a legally recognized duty, there can be no negligence or resulting liability." Yost v. Wabash Coll., 3 N.E.3d 509, 520 (Ind. 2014). The determination of duty is generally an issue of law, and the applicable test balances three factors: 1) the relationship between the parties; 2) the reasonable foreseeability of harm to the person injured, and 3) public policy concerns. Id. at 520-521.

17

Notre Dame argues that Mr. Daniels's negligence claim should be dismissed because Indiana law has consistently held that a school policy doesn't create a legal duty or signify that a university breached that duty. Notre Dame primarily relies on Yost v. Wabash Coll., 3 N.E.3d 509 (Ind. 2014) to support the proposition that Indiana courts have declined to recognize a special relationship between a university and its students.

Yost v. Wabash Coll., 3 N.E.3d 509 (Ind. 2014) involved a hazing incident between two fraternity students. Student Yost filed a negligence claim against the university arguing that the university assumed a duty of reasonable care to protect students like Yost from hazing activities that led to his injury. To support his claim of duty, Mr. Yost showed that the university had an anti-hazing policy, procedures for reporting and disciplining students and fraternities that violate the policy, several investigations and resulting discipline for violating the policy, and a guide for student behavior. Yost v. Wabash Coll., 3 N.E.3d 509, 517 (Ind. 2014). The Indiana Supreme Court determined that these policies and actions by the university weren't enough to create a specific undertaking to have direct oversight and control of the student members of the organization. The Indiana Supreme Court clarified that if student Yost had alleged that the university undertook certain services, liability might have attached if negligently performed.

Mr. Daniels doesn't appear to contend that any Indiana court has recognized a duty of the sort on which his negligence claim is founded. He points to cases in Tennessee and Ohio, and to Indiana courts' general approaches for recognizing duties.

The <u>Yost</u> case isn't on all fours with this one. The <u>Yost</u> court considered a specific set of facts in deciding whether Wabash College had voluntarily assumed a burden to protect Mr. Yost from physical harm allegedly caused by hazing. Wabash College had announced a policy against hazing, had occasionally investigated past complaints and had occasionally imposed sanctions on organizations that were found to have violated the policy. And in doing so, the court sought guidance from Section 42 of the Restatement (Third) of Torts, which addresses services that reduce the risk of physical harm – an aspect missing from Mr. Daniels's case. The <u>Yost</u> case concluded that Wabash College had not assumed a duty of reasonable care by adopting a policy and occasionally enforcing it.

Mr. Daniels asserts a negligence claim under Indiana law. Since the highest court of Indiana hasn't squarely decided whether the Indiana law recognizes the duty that Mr. Daniels says Notre Dame breached, this federal court must try to apply the law the way the highest court in Indiana would construe it. See <u>Frye v. Auto-Owners Ins. Co.</u>, 845 F.3d 782, 786 (7th Cir. 2017). While the <u>Yost</u> opinion isn't an exact fit, it provides enough guidance for this case.

What Notre Dame is alleged to adopted is more complex than what was at issue in <u>Yost</u>: Notre Dame addressed several issues of student conduct, not just hazing; Notre Dame established multiple, parallel, specific processes for handling alleged violations. Mr. Daniels found himself in varying tracks, depending on the nature of the claims against him. But the policy that Notre

19

Dame undertook was the same sort of creature that Wabash College created: it defined and addressed student conduct and provided one or more methods to deal with allegations of misconduct. If the Wabash College policy created no assumed duty of due care toward the students, neither did Notre Dame's policies. Mr. Daniels doesn't seem to argue to the contrary.

The court grants Notre Dame's motion to dismiss the negligence claim in Count VI.

### *Count VII – Negligent Infliction of Emotional Distress*

Notre Dame argues that Mr. Daniels's negligence infliction of emotional distress claim can't survive because it can't exist without the existence of a negligence claim. Indiana doesn't permit actions seeking damages for emotional distress predicated upon a breach of an alleged duty not to inflict emotional injury on another. Stand-alone actions for negligent infliction of emotional distress aren't cognizable in Indiana. Spangler v. Bechtel, 958 N.E.2d 458, 466 (Ind. 2011). Since the court dismisses Mr. Daniels's negligence claim, Mr. Daniels's negligent infliction of emotional distress claim can't stand on its own.

Even so, Mr. Daniels doesn't plead that he sustained a physical impact from Notre Dame's negligence. Indiana law uses the modified impact rule to determine whether Mr. Daniels can bring a claim of negligent infliction of emotional distress. The modified impact rule requires that Mr. Daniels sustain a direct physical impact. The impact doesn't need to cause physical injury to the plaintiff, and the emotional trauma suffered by the plaintiff doesn't need to result

20

from a physical injury caused by the impact. <u>Bader v. Johnson</u>, 732 N.E.2d 1212, 1221 (Ind. 2000). Mr. Daniels argues that being searched by police and escorted by the Notre Dame police to be questioned is sufficient to meet the physical impact burden.

But in his complaint, Mr. Daniels seeks emotional distress as a remedy as a result of Notre Dame's enforcement of the emergency withdrawal, Title IX, and student conduct policies. The complaint doesn't allege that the officer's conduct was negligent. Since Mr. Daniels doesn't allege a physical impact that resulted from Notre Dame's alleged negligent selecting, supervising, and training university employees, there can be no claim for the negligent infliction of emotional distress. *See e.g.*, <u>Morgan v. Snider High Sch.</u>, No. 1:06-CV-337, 2007 WL 3124524, at *14 (N.D. Ind. Oct. 23, 2007). The court grants Notre Dame's motion to dismiss count VII of Mr. Daniels's complaint.

*Count VIII – Declaratory Judgment and Injunctive Relief*

The court grants Notre Dame's motion to dismiss Mr. Daniels's claim for declaratory judgment and injunctive relief. Mr. Daniels can still obtain injunctive and declaratory relief as the he requests both as forms of relief in his remaining claims, but this claim can't survive as a separate, free standing claim. *See* <u>Onyango v. Downtown Ent., LLC</u>, 525 F. App'x 458, 460 (7th Cir. 2013); <u>Keesler v. Electrolux Home Prod., Inc.</u>, No. 16 C 199, 2016 WL 3940114, at *3 (N.D. Ill. July 21, 2016). The court grants Notre Dame's motion to dismiss Count VIII of Mr. Daniels's complaint.

21

CONCLUSION

In summary, the court DENIES Notre Dame's motion to dismiss Counts I and IV, and GRANTS Notre Dame's motion to dismiss Counts II, III, V, VI, VII, and VIII [Doc. No. 14].

SO ORDERED.

ENTERED:   August 25, 2023

            /s/ Robert L. Miller, Jr.
        Judge, United States District Court