UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRYCE THOMAS DANIELS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 3:22-CV-698-PPS/JEM |
| ) | |
| UNIVERISTY OF NOTRE DAME, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Bryce Thomas Daniels filed an objection to a decision by Magistrate Judge Martin denying his motion to strike an agreed protective order entered in this case on December 5, 2022. [DE 96.] But because I find that Magistrate Judge Martin's ruling is not clearly erroneous or contrary to law, I DENY Daniels' motion and uphold the ruling in its entirety.

## Background

The Parties filed a Joint Motion for Entry of Proposed Stipulated Protective Order on November 30, 2022. [DE 24.] Magistrate Judge Martin on December 5, 2022, granted the motion and entered the Agreed Protective Order. [DE 25.] The Protective Order designates certain categories of information as confidential, including: (1) education records of current and former Notre Dame Students (as defined and governed by the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g, 34 C.F.R. Part 99 ("FERPA")), including Daniels' records; (2) personal, medical,

1

employment, and financial information of Daniels and other persons, including current or former students or employees of Notre Dame; (3) confidential records of investigations conducted by Notre Dame; and (4) non-public institutional, financial, and proprietary information. [*See* DE 25 at II.] These are only a few examples.

On March 5, 2024, Daniels filed a motion to strike the Protective Order. [DE 75, DE 76.] In essence, Daniels argued that Notre Dame could not demonstrate "good cause" for maintaining the Protective Order. [DE 76 at 4.] To support this claim, Daniels argued that any personally identifiable information could be redacted and that the bulk of the information Notre Dame had produced was almost two years old, which he argued cut against any harm in disclosure. [*Id*. at 5.] Plaintiff also claimed that the Protective Order hamstrung his ability to prosecute his case because he was unable to use the documents that Notre Dame had designated as confidential. [*Id*. at 3–4.]

In response, Notre Dame argued that Plaintiff bore the burden of proving "good cause" to vacate the Protective Order. [DE 79 at 6–7.] Notre Dame argued that Daniels failed to articulate, much less satisfy, a four-factor test that courts use to analyze motions to vacate a protective order. [*Id*. at 8–15.] As relevant to each factor, Notre Dame argued: (1) that the nature of the blanket Protective Order made it more difficult to vacate; (2) that it was not foreseeable at the time the Protective Order was entered that Plaintiff would later seek to vacate it; (3) that Notre Dame relied upon the Protective Order to maintain the confidentiality of student records and identifiable

2

information under FERPA; and (4) that Daniels had not shown "good cause" to vacate. [*Id*.]

In reply, Daniels reframed his argument to claim that the Protective Order was actually null and void to begin with because the Magistrate Judge did not make an independent finding of good cause *before* he entered the Protective Order. [DE 81 at 1–2.] Daniels argues that Notre Dame was unable to point to a single harm (past, present, or future) that would justify the Protective Order. [*Id*. at 3–6.] And Daniels concluded that even under Notre Dame's incorrect framing of the issue as one of vacating a protective order that had been properly entered, he nonetheless satisfied all four-factors of the applicable test. [*Id*. at 6–9.]

On May 10, 2024, Magistrate Judge Martin denied Daniels' request to vacate the Protective Order. [DE 95.] Magistrate Judge Martin first addressed Daniels' argument that Notre Dame "has not shown good cause for the protective order to continue to remain in place." [*Id*. at 2.] Magistrate Judge Martin listed the categories of information the Protective Order designated as confidential and cited Seventh Circuit authority for the proposition that protective orders may designate categories of information as confidential, instead of determining good cause on a document-by-document basis, so long as the court (1) concludes that the parties are acting in good faith to designate their confidential materials and (2) makes explicit that the parties and public can challenge such designations. [*Id*. at 1–2 (citing *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 946 (7th Cir. 1999).] Magistrate Judge Martin addressed Daniels'

3

challenges to Notre Dame's bases for confidentiality and concluded that "it is not up to Plaintiff to determine that other peoples' information should be disclosed or that FERPA does not apply after a certain period of time." [*Id*. at 2.]

In addressing Daniels' assertion that he could not prosecute his case under the Protective Order, Magistrate Judge Martin pointed to the terms of the Protective Order itself and applicable case law to note that Notre Dame, as the designating party, bore the burden of demonstrating a need for confidentiality. [*Id*. at 2–3.] Magistrate Judge Martin explained that Daniels was free to submit to the court materials designated by Notre Dame as confidential along with a motion to seal, at which point Notre Dame would bear the burden to argue that the materials should remain under seal or be placed on the public docket. [*Id*. at 3.]

Finally, Magistrate Judge Martin cited the Supreme Court case *Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) to explain that Daniels' argument that the Protective Order improperly kept information from the public was "not relevant at this stage in the proceedings" because pretrial discovery was not a traditionally public component of a civil trial. [*Id*. at 3–4.] Magistrate Judge Martin reiterated that the Protective Order did not prohibit Daniels' receipt of discovery or ability to file documents under seal. [*Id*. at 4.]

## Discussion

Daniels now seeks review of Magistrate Judge Martin's "non-dispositive" decision denying his request to strike the Protective Order. Federal Rule of Civil

4

Procedure 72(a) governs review of magistrate judge rulings on non-dispositive matters and authorizes a district court to modify or vacate an order that is "clearly erroneous or is contrary to law." Rule 72(a)'s "clearly erroneous" standard of review is an extremely deferential one. *Perez v. Staples Contract & Commercial LLC*, 31 F.4th 560, 569 (7th Cir. 2022). Clear error is only found where the reviewing court "is left with the definite and firm conviction that a mistake has been made." *Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997). Even if I would have decided the matter differently, Magistrate Judge Martin's ruling will stand unless Daniels demonstrates that the ruling was clearly erroneous or contrary to law.

Daniels claims to assert three arguments for vacating Magistrate Judge Martin's decision, all of which are based on alleged abuses of discretion in: (1) entering the Protective Order without first determining good cause; (2) maintaining the Protective Order without a showing of good cause now that the Order has been challenged; and (3) managing discovery such that there is no default presumption of disclosure or of publicity. [DE 96 at 4.]

There is a fundamental disagreement between the Parties over how to frame Daniels' request and the Parties' respective burdens of proof. Daniels frames his argument as a challenge to the original adoption of the Protective Order. Notre Dame frames Daniels' challenge as attacking the ongoing need for the Protective Order. Under either framing of the issue, the Parties agree that the outcome Daniels seeks is the same: removal of the Protective Order. But the distinction between a challenge to the initial

5

entry of the Protective Order, on the one hand, and the ongoing need for the Protective Order, on the other, is more than just semantics because it guides the applicable standard of proof. This dispute on how to frame the issue is central to Daniels' Rule 72 objections as he asserts that Magistrate Judge Martin erroneously adopted Notre Dame's framing of the question and did not address arguments Daniels advanced in his Motion to Strike.

Daniels argues that Magistrate Judge Martin abused his discretion in entering the Protective Order without first independently determining whether "good cause" existed for the Order. [DE 96 at 4–5.] According to Daniels, Magistrate Judge Martin then compounded this initial error by misunderstanding Daniels' argument in his Motion to Strike and by instead focusing only on whether good cause existed for the Protective Order to remain in place. [*Id.*] Notre Dame counters that Daniels has waived this argument because he did not raise it within 14 days after Magistrate Judge Martin entered the Protective Order on December 5, 2022. [DE 100 at 1–2.] Daniels replies that Notre Dame's response is a new argument, so should not be considered, and that no authority exists to support such a claim. [DE 101 at 5–6.] But, unsurprisingly, the core of Notre Dame's response recasts the current question as whether good cause exists to justify an ongoing need for the Protective Order.

Daniels asserts that his case is identical to *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854 (7th Cir. 1994). In *Jepson* the Seventh Circuit, in part, reversed a district court's decision to impose sanctions because it determined that good cause did not exist

6

for the underlying protective order alleged to have been violated. 30 F.3d at 858–60. In doing so, the Seventh Circuit commented: "[i]n deciding whether to issue a stipulated protective order, the district court must independently determine if 'good cause' exists." *Id*. at 858. The Circuit noted that there was no indication that the magistrate judge made such an independent determination that "good cause" existed before issuing the protective order. *Id*. at 858–59. The Circuit then conducted its own good cause analysis and determined that the non-party to the litigation, who sought the sanctions, had failed to show good cause for prohibiting the use of the deposition testimony at issue. *Id*. at 859–60.

Daniels urges a reading of *Jepson* that requires Magistrate Judge Martin to have explicitly articulated at length the "good cause" to enter the Parties' Agreed Protective Order. [*See* DE 96 at 5.] The "good cause" requirement comes from Rule 26(c)(1), which states: "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . ." and lists several methods by which a protective order may achieve those ends. But other courts in this Circuit have recognized that such explicit references to good cause are not necessary if the record reflects that the judge engaged in a good cause analysis prior to adopting the protective order. *See Grove Fresh Distribs., Inc. v. John Labatt Ltd.*, 888 F.Supp. 1427, 1445 (N.D. Ill. 1995) ("And although I never actually used the phrase 'good cause' to justify my reasons for signing [the stipulated protective order], the

7

record amply attests to an independent determination of good cause, including a balancing of interests, which justified the seal as well as the protective order.").

Moreover, turning to the opinion at issue here, while Magistrate Judge Martin may not have referred to "good cause" as often or explicitly as Daniels would like, I find no clear error in his analysis. Magistrate Judge Martin's opinion reflects that he determined the confidential nature of education records protected by FERPA, and the medical, employment, and financial information of Notre Dame to constitute good cause for entering the Agreed Protective Order. [*See* DE 95 at 1–2; DE 25 at 2–3.] And while Daniels makes much of the fact that Magistrate Judge Martin does not cite *Jepson*, Magistrate Judge Martin cited another Seventh Circuit case, *Citizens First Nat. Bank of Princeton*, that applied *Jepson*. 178 F.3d at 944.

Daniels next claims that Magistrate Judge Martin abused his discretion in maintaining the Protective Order that he claims was entered without a showing of "good cause." [*See* DE 96 at 5–8.] Based on the title of this argument, I expected Daniels to discuss the standard to modify or vacate a protective order, as Notre Dame has. To modify a protective order, courts in this Circuit consider the following four factors: "(1) the nature of the protective order; (2) the foreseeability, at the time of issuance of the order, of the modification requested; (3) the parties' reliance on the order; and most significantly (4) whether good cause exists for the modification." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 565 (7th Cir. 2018) (citation omitted).

8

Instead, Daniels largely reiterates his *Jepson* arguments concerning entry of the Protective Order and delineates numerous reasons why the Protective Order is unnecessary and prohibitive. But as I've discussed above, I find no clear error in Magistrate Judge Martin's justification for his entry of the Agreed Protective Order. And Daniels does not address the standard to vacate as articulated in *Heraeus*. Because this argument depends on Daniels argument that no "good cause" existed to enter the Protective Order originally, I find no clear error here either.

Finally, Daniels seeks to distinguish his request to strike by arguing that *Seattle Times Co. v. Rhinehart* concerns only pretrial depositions and interrogatories but not other forms of pretrial discovery such as document production, which is at issue here. [DE 96 at 9.] This argument incorrectly narrows *Rhinehart*'s holding. In *Rhinehart* the Supreme Court interpreted Rule 26(c) to confer "broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." 467 U.S. at 36. In so doing, the Court noted that "pretrial depositions and interrogatories are not public components of a civil trial" because they "were not open to the public at common law." *Id.* at 33.

But nothing in *Rhinehart* limited its holding only to pretrial depositions and interrogatories. Rather, the Court interpreted Rule 26 to broadly confer power to trial courts to regulate the dissemination of information obtained through pretrial discovery generally. *Id.* at 31. In fact, the respondents in *Rhinehart* produced several documents in response to document requests that included, among other things, financial and income

9

tax documents that respondents moved to put under a protective order. *Id*. at 25–27. *Rhinehart* is clear that Rule 26(c) confers broad discretion to judges to manage discovery under a protective order, including document production and dissemination. Magistrate Judge Martin correctly applied *Rhinehart* and did not abuse his discretion in ruling that the Protective Order did not impermissibly shield information from the public.

## Conclusion

For the aforementioned reasons, Daniels' Rule 72(a) objection to Magistrate Judge Martin's opinion denying his Motion to Strike the Protective Order [DE 96] is DENIED.

SO ORDERED.

ENTERED: October 29, 2024.

/s/   Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT