IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| BRYCE THOMAS DANIELS<br><br>Plaintiff,<br>v.<br><br>UNIVERSITY OF NOTRE DAME<br><br>Defendant. | Civil Action No. 3:22-cv-00698-PPS-JEM |

**OBJECTIONS UNDER FED. R. CIV. P. 72(a)**

-FILED-
JUN 16 2025
Chanda J. Berta, Clerk
U.S. DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

**TABLE OF CONTENTS**

I.   Background ................................................................................................................. 1

II.  Standard of Review ..................................................................................................... 4

III. Argument .................................................................................................................... 5

    A.    Magistrate Judge Martin Improperly Limited Discovery to *Notre Dame*'s Theories of Plaintiff's Case, Incorrectly Stated the Scope of Facts Alleged in the Sec. Am. Compl., did not Apply the Seventh Circuit's Purdue Univ. Precedent, and did not Benefit from the facts Uncovered in Deposition Testimony. ............ 6

    B.    Magistrate Judge Martin Improperly Limits Discovery by Making a Factual Finding Inappropriate on a Motion to Compel. ................................................... 8

    C.    Magistrate Judge Martin Improperly Finds that Producing Approximately 37 Pages to be Disproportionate Burden when Notre Dame has not Produced Evidence of Burden, Notre Dame did not Claim Burden for TAMT Records of *Females* (Though for some Reason Records of *Males* are Burdensome), and did not Benefit from Deposition Testimony of the Chairman of TAMT Stating the Records were Easily and Readily Accessible and Producible. ............................. 9

IV. Conclusion ................................................................................................................ 11

I.   Background

Plaintiff brought this case on August 25, 2022, under numerous theories of Title IX discrimination that discovery has now confirmed and substantiated.[1] On February 2, 2024, Judge Simon clarified to the parties that there was no limitation on the types of theories Plaintiff could pursue relevant to his Title IX claim—"[w]e have a live full-blown Title IX claim."[2]

On March 4, 2024, Plaintiff served his First Supplemental Requests for Production directed to Notre Dame. Plaintiff's requests sought, *inter alia*:

> Request for Production No. 1: Produce all policies, procedures, organization documents, records of recommendation for dismissal since 2009 (including gender and reason(s) for recommendation, records of those monitored since 2009 (including gender and reason(s) for monitorship) for the Threat Assessment and Management Team ("TAMT").
>
> Request for Production No. 2: Provide a list of all students at Notre Dame about whom the University is aware <u>have been alleged to feel suicidal ideation, possess firearms on campus, or have threatened other students</u> (student reports, OCS, UCC visits, Memorial Epworth evaluations/admissions, etc.)   since 2009 with names redacted but gender, category, and whether they were dismissed from the University indicated.

**Dkt. 129 Ex. 1**. The categories of student allegations listed in Request No. 2 are those categories Notre Dame *now* claims it believed Plaintiff fell into in Fall of 2021, but Plaintiff disputes that Notre Dame sincerely believed those classifications in Fall of 2021 (or now) because discovery has shown that Notre Dame's *multiple* administrative departments arrived at conclusions that Plaintiff was <u>never</u> thought to be a harm to himself or others, and that Notre Dame's own psychological analysis of Plaintiff had corroborated that *in Fall of 2021*.

---

[1] Plaintiff's Second Amended Complaint also contains claims of Notre Dame's ADA, Rehabilitation Act, and breach-of-contract violations.
[2] Among the theories Plaintiff may pursue are "'(1) 'erroneous outcome,' (2) 'selective enforcement,' (3) 'deliberate indifference,' and (4) 'archaic assumptions.'" *Doe v. Purdue Univ.*, 928 F.3d 652, 667 (7th Cir. 2019) (cleaned up).

Rather, Plaintiff's theory is that once the TAMT learned of the Title IX complaint against Plaintiff, TAMT manifestly transformed "conduct" it was reviewing from not threatening—per Notre Dame's own assessment—to worthy of removing Plaintiff from school. Simply because a female had then filed a Title IX complaint against Plaintiff, and the Notre Dame TAMT wanted to respond overly aggressively against males accused by females based on its fears of its past Title IX issues and of stereotypes about females as victims of males. *See also* Sec. Am. Compl. ¶ 159.

Additionally, Notre Dame's administrators in Summer of 2022 admitted to Plaintiff's theory. That conversation was recorded, and the transcript has been provided. Further outlining of evidence showing Notre Dame did not in Fall 2021 believe its post-lawsuit justifications for Plaintiff's removal (that he was an imminent harm to himself or others) are recounted in **Dkt. 133** at 1–4.[3] Plaintiff welcomes the opportunity for a hearing to review this evidence and the clear basis it provides for Plaintiff's Motion to Compel if the District Judge would find that helpful.

On May 17, 2024, Notre Dame responded to Plaintiff's requests. **Dkt. 129 Ex. 2**. Regarding Request 1, Notre Dame contended:

> Plaintiff's request . . . is overbroad because it is not limited to individuals who were or may have been similarly situated to Plaintiff. . . . [T]his Request is substantially overbroad and disproportionate to the needs of the case because it would require Notre Dame to review documents and files associated with numerous Notre Dame students, alumni, and employees who have been monitored by TAMT, and of dozens of Notre Dame personnel who have served on TAMT for a 15-year period.

---

[3] Notre Dame acts as though the Protective Order in this case requires the sealing of all *anonymized* documents despite the Protective Order explicitly stating the Protective Order does not require automatic sealing. Dkt. 24-1 at 7(D). FERPA requires, however, in addition to anonymizing PII such as name and address, only anonymizing that which would lead a member of the Notre Dame community without specialized knowledge of the circumstances to be able to identify the student in question. *See* 34 C.F.R. § 99.3 (f) (including within the definition of PII "Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty"). Meaning, FERPA, and the Protective Order would require sealing *only if* the information could alert a student at Notre Dame who had no idea of a student's TAMT removal or its circumstances *to* that specific student. Because the Magistrate Judge personally attacks Plaintiff's alleged "cavalier attitude" toward sealing, when it is simply what FERPA (and the Protective Order) requires, Plaintiff incorporates the Motion to Compel briefing by reference and does not reattach exhibits as Plaintiff has done in other Objections to the Magistrate Judge's orders.

*Id.* On February 18, 2025, Notre Dame supplemented its response by providing the records of only *females* monitored by TAMT.[4] **Dkt. 129 Ex. 2**. Notre Dame did not contend that the TAMT records of *female* students were irrelevant or burdensome to produce. However, Notre Dame contended the TAMT records of *male* students were irrelevant and somehow (though not anywhere explained by Notre Dame) more burdensome to produce than the female students' TAMT records.

On March 7, 2025, Plaintiff moved this Court to compel Notre Dame to produce what would be, if comparable to the TAMT records of female students, 37 pages of TAMT records of male students. Plaintiff does not seek documents to expand the scope of this case—it is simply entirely unclear (and suspicious) that Notre Dame is treating female TAMT records differently than male TAMT records. Notre Dame, because it has produced the TAMT records of females monitored, plainly agrees to the relevancy of the documents.

Between May 28, 2025, and June 2, 2025, Plaintiff took the depositions of Michael Seamon (the Chairman of TAMT); Erin Oliver (the Title IX Director); Heather Ryan (the Office of Community Standards Director); and Christine Holst-Haley (the Notre Dame Law School student manager).[5] During these depositions, Plaintiff learned of additional facts and received knowledge that substantiated the basis for Plaintiff's Motion to Compel—facts that Magistrate Judge Martin did not have available at the time of his Order. On June 4, 2025, Magistrate Judge Martin denied Plaintiff's Motion to Compel the production of *male* TAMT records.

Magistrate Judge's Order is based on an incorrect application of the incredibly lenient discovery standards, effectively forcing Plaintiff to turn a routine you-can't-give-me-only-half-of-

---

[4] On various dates since May 17, 2024, Plaintiff and counsel for Notre Dame met and conferred regarding the production of records of *male* students monitored by TAMT. Plaintiff has conceded at this time that limiting the time period to 2014 forward is acceptable. Plaintiff has also conceded at this time that limiting the inquiry to only students is acceptable.

[5] As of this date, the deposition transcripts are not all available. Further, Notre Dame has designated the transcripts as *entirely* confidential. Therefore, Plaintiff will characterize the deposition testimony without the transcripts, and if Notre Dame disputes Plaintiff's characterization of deposition testimony, Plaintiff once again welcomes a hearing.

3

the-responsive-documents Motion to Compel into a miniature summary-judgment motion. Magistrate Judge Martin's Order is also based on incorrect statements of the alleged facts, and Magistrate Judge Martin is required to conduct discovery under Plaintiff's theories of liability—not Notre Dame's. *See Arcangelo, Inc. v. DirectBuy, Inc.*, No. 3:13-CV-104-PPS-JEM, 2015 WL 5148513, at *3 (N.D. Ind. Sept. 2, 2015) (quoting that "[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory.") (citation omitted) (Martin, Mag. J.). Lastly, the discovery of new facts, and admissions, in deposition while Magistrate Judge Martin's Order was pending starkly show that the factual basis for the Order was errant.

## II.   Standard of Review

1. The appropriate procedure for objecting to a Magistrate Judge's non-dispositive order by review of the District Judge is via Fed. R. Civ. P. 72(a). "When a motion is non-dispositive, the Court must modify or set aside any part of the magistrate judge's order that is 'clearly erroneous or is contrary to law.'" *Baker v. McCorkle*, No. 116CV03026JMSMPB, 2018 WL 3439078, at *3 (S.D. Ind. July 17, 2018) (quoting Fed. R. Civ. P. 72(a)). "An order is contrary to law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Pain Ctr. of SE Indiana, LLC v. Origin Healthcare Sols., LLC*, No. 1:13-CV-00133-RLY, 2014 WL 6674757, at *2 (S.D. Ind. Nov. 25, 2014) (citations omitted). Further, "[a]buse of discretion means . . . reliance on a forbidden factor, not considering an essential factor, or use of an incorrect legal standard." *Smego v. Payne*, 854 F.3d 387, 391 (7th Cir. 2017). Given that Fed. R. Civ. P. 72(a) is a review of a Magistrate Judge's decision within the parameters of what the Magistrate Judge reviewed in making that decision, it would follow that it is improper for any new arguments to be raised.

## III.  Argument

"Relevancy is 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Martinez v. Coloplast Corp.*, No. 2:18-CV-220-JTM-JEM, 2021 WL 486927, at *1 (N.D. Ind. Feb. 10, 2021) (citing *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)) (Martin, Mag. J.). "Furthermore, the Rule provides that '[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.' Fed. R. Civ. P. 26(b)(1)." *Sanders v. Univ. of Notre Dame*, No. 3:21-CV-404-RLM-JEM, 2021 WL 5358575, at *1 (N.D. Ind. Nov. 17, 2021) (Martin, Mag. J.)

"The party objecting to the discovery request bears the burden of showing why the request is improper." *McGrath v. Everest Nat'l Ins. Co.*, 625 F. Supp. 2d 660, 670 (N.D. Ind. 2008). "That burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *Id.*

Further, the scope of discovery is properly the allegations in the Sec. Am. Compl.—not Notre Dame's counterarguments. *See Arcangelo, Inc. v. DirectBuy, Inc.*, No. 3:13-CV-104-PPS-JEM, 2015 WL 5148513, at *3 (N.D. Ind. Sept. 2, 2015) (quoting that "[A] party is entitled to seek discovery on its theory of the facts and the law, and is not limited in discovery by the opponent's theory.") (citation omitted) (Martin, Mag. J.).

A court's discretion in discovery matters is broad, but a court must necessarily follow the lenient standards of Fed. R. Civ. P. 26(b)(1) and cannot without incredible cause override the massively strong public-policy presumption of disclosure. *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Meaning, a court's proper discretion ends when it affronts on the Fed. R. Civ. P., established caselaw, improperly finds facts before a fact-finding stage, or

5

improperly relies on facts. *See id.* Additionally, a court may not shift the burden of nondisclosure onto the party wanting disclosure—it is a burden properly born by the party seeking nondisclosure.

### A. Magistrate Judge Martin Improperly Limited Discovery to *Notre Dame*'s Theories of Plaintiff's Case, Incorrectly Stated the Scope of Facts Alleged in the Sec. Am. Compl., did not Apply the Seventh Circuit's *Purdue Univ.* Precedent, and did not Benefit from the facts Uncovered in Deposition Testimony.

Here, Magistrate Judge Martin concludes, contrary to the allegations in the Sec. Am. Compl. ¶¶ 10, 136, passim, that Plaintiff's allegations of discriminatory patterns are based *only* on his experiences and "without factual support of a pattern or practice of broader gender bias." Not only is that not true—that is not an appropriate basis for limiting discovery. Rather, that is the *point* of discovery. Plaintiffs in discrimination cases are not required to show a history of discrimination <u>before</u> being able to discover information, held only by defendants, of those discriminatory patterns. The Seventh Circuit has explicitly held that discrimination against a particular plaintiff can be supported by evidence that the defendant is motivated *generally* to discriminate against males. "The [2011 Dear Colleague] letter and accompanying pressure gives [Plaintiff] a story about why [Defendant] *might have been motivated to discriminate against males accused of sexual assault.*" See Doe v. Purdue Univ., 928 F.3d 652, 669 (7th Cir. 2019). Magistrate Judge Martin's Order is inconsistent with *Purdue Univ. See* Sec. Am. Compl. ¶ 128 (also discussing impact of 2011 Dear Colleague Letter).

Additionally, Christine Holst-Haley in her June 2, 2025, deposition testified to the knowledge of two other male students who had been removed by TAMT—one for alleged conduct with a non-firearm weapon, one for alleged repeated harassing conduct. However, as explained from the *female* TAMT records in **Dkt. 133** at 1–4, those same allegations were present in those cases of females, <u>yet those females were not removed from school</u>. Plaintiff has now learned of multiple instances of Notre Dame, through TAMT making haphazard conduct findings and

6

removing whomever it wants whenever it wants, giving males more severe penalties than females for similar allegations. It is also worth noting that at no point did counsel for Notre Dame object to the relevancy of Plaintiff's line of questioning regarding these two male students removed by TAMT. Notre Dame has conceded the relevancy of such information.

And to be clear, Michael Seamon (Chairman of TAMT) testified on May 28, 2025, that TAMT is not interested in any sort of later conduct findings by Notre Dame's other departments such as the Office of Community Standards. In Plaintiff's case, all of the conduct that was alleged against Plaintiff in Fall 2021 was found in Summer of 2022 to have not actually happened. When Plaintiff asked Mr. Seamon how his office viewed that finding, he said his office didn't consider it, didn't know about it, didn't inquire about it—didn't care about it. Mr. Seamon testified that TAMT makes its own conduct determinations, and TAMT's erroneous outcome on a conduct determination is exactly what Plaintiff alleged in the Sec. Am. Compl. ¶ 159.

Christine Holst-Haley (law school student manager) in Fall 2021 also stated of an email to be sent to the Notre Dame Law School student body describing Plaintiff as being removed *by* "university student conduct" as "looks great." **Exhibit 1**. It is no wonder Notre Dame is now also trying to pigeonhole Plaintiff's Title IX theories of recovery into "selective enforcement"—the "erroneous outcome" evidence keeps mounting. Notre Dame has long claimed TAMT did not make conduct determinations, so an "erroneous outcome" theory was inappropriate, but discovery has shown that Notre Dame's post-litigation justifications are incorrect.

Magistrate Judge Martin, however, improperly limited the scope of Title IX theories Plaintiff can probe to "selective enforcement." Notre Dame in the Motion to Compel briefing alleged that Plaintiff's claims really were only for "selective enforcement." However, that is not true, and Notre Dame does not get to decide Plaintiff's Title IX theories for him. As discussed in Footnote 2, there are a number of theories this Circuit has recognized, and it is improper to

7

pigeonhole Plaintiff into one. Deposition testimony has greatly supported an "erroneous outcome" theory of Title IX liability. Plaintiff has received through deposition testimony personal knowledge of Notre Dame repeatedly making conduct determinations of male and female students yet imposing the harsh penalty of removal from school upon only males for the same conduct.

Respectfully, the Magistrate Judge did not apply *Purdue Univ.*, did not apply *Purdue Univ.* because of the Magistrate Judge's misstatements of facts, did not benefit from the additional facts supporting Plaintiff's claim uncovered through deposition testimony, and improperly limited the scope of discovery to *Notre Dame*'s theories of liability—not Plaintiff's as is proper.

### B. Magistrate Judge Martin Improperly Limits Discovery by Making a Factual Finding Inappropriate on a Motion to Compel.

Magistrate Judge Martin was clearly erroneous in functioning as the sole fact finder in this case by concluding that "the behavior that led to Plaintiff's dismissal was not sexual in nature." Dkt. 144 at 4. This finding requires that Magistrate Judge Martin find as factually true that Notre Dame believed, in Fall of 2021, its now-proffered bases for Plaintiff's removal—that he was a harm to himself or others. However, evidence has shown, as outlined in **Dkt. 133** at 1–4, at the very least, that Notre Dame does not appear to have thought Plaintiff was a harm to anyone until this lawsuit. Additionally, Magistrate Judge Martin's improper factual finding is not consistent with the Sec. Am. Compl. as it clearly states Jane Roe filed a Title IX complaint against Plaintiff, and *that* is what precipitated Plaintiff's removal. ¶ 40. Notre Dame's TAMT Chairman corroborated this not only in deposition testimony but in his affidavit submitted to this Court. Dkt. 52 Seamon Decl. ¶ 14 (Jane Roe "had reported ongoing harassing conduct" that fell within the Title IX definition of harassment, was viewed as such by TAMT, and was TAMT's "primary concern"). It is improper for Magistrate Judge Martin to limit discovery to Notre Dame's post-litigation explanations for its conduct and for Magistrate Judge Martin to operate as a fact finder essentially deciding the merits of the case on a Motion to Compel.

8

### C. Magistrate Judge Martin Improperly Finds that Producing Approximately 37 Pages to be Disproportionate Burden when Notre Dame has not Produced Evidence of Burden, Notre Dame did not Claim Burden for TAMT Records of *Females* (Though for some Reason Records of *Males* are Burdensome), and did not Benefit from Deposition Testimony of the Chairman of TAMT Stating the Records were Easily and Readily Accessible and Producible.

Magistrate Judge Martin also errs in concluding that even if the information sought is relevant to Plaintiff's claims—and because this Court is bound to follow the Seventh Circuit in *Purdue Univ.*, it is—"the burden of producing such a large amount" of information is disproportional to the needs of this case. As a matter of law—not of judicial discretion—the Fed. R. Civ. P. standards for showing disproportionate burden sufficient to cease production are high, and having to produce approximately 37 pages is legally insufficient to cease production. *See Doe v. Loyola Univ. Chicago*, No. 18-CV-7335, 2020 WL 406771, at *6 (N.D. Ill. Jan. 24, 2020) ("[the Court] knows the production will involve about 1,000 pages").

The page counts of the four female students' records from 2014 forward are: five (5) pages; twenty-six (26) pages; five (5) pages; and one (1) page. *See* **Dkt. 129-1** at 3. If the facts are as Notre Dame claims—that females and males are treated similarly and there is no over-punishment of males for similar conduct as females, the TAMT record volumes should be the same between females and males. Courts have readily granted motions to compel documents intended to show patterns of discrimination on the basis of sex with far more volume than that which is reasonably forecasted by Notre Dame's already-made production of documents regarding *females* monitored by TAMT.

37 pages is not as a matter of law sufficiently large to contravene the incredibly lenient discovery standards. Further, Magistrate Judge Martin states that the "level of redaction that would be required" causes the burden of producing approximately 37 pages to outweigh its likely benefit. Plaintiff showed this Court from the TAMT records of females he received that Notre Dame clearly treated females who actively threaten, are confronted by emergency police services, and repeatedly

9

affront other students, better than Plaintiff. **Dkt. 133** at 1–4. Plaintiff also learned of Notre Dame's Fall 2021 psychological assessment of Plaintiff finding that Plaintiff was not a harm to himself or anyone else ***only because*** the *District* Judge permitted Plaintiff's ADA and Rehabilitation Act claims to go forward. *See also* **Dkt. 133** at 1–2 (describing the Fall 2021 assessment concluding Plaintiff was not a harm to anyone). Respectfully, Magistrate Judge Martin has historically been off base in evaluating the likely probative effect of Plaintiff's claims and requests.[6] Regardless, of the 37 pages of TAMT records of *females*, there are a modest number of redactions made. Notre Dame cannot have it both ways: on one hand claiming there is so much information in the *male* TAMT records they have to be sealed even after redaction—but maintaining on the other hand—no, Notre Dame spends a burdensome amount of time getting 37 pages into producible shape.

Additionally, Michael Seamon (Chairman of TAMT), testified in his deposition that the TAMT-record documents are readily available and easily accessible on Notre Dame's Maxient software. In fact, he testified it is so easy to review them that he does it periodically. Notre Dame's own administrator says this is not a heavy lift—it is improper for the Magistrate Judge to divine a heavy lift on Notre Dame's behalf without forcing Notre Dame to state how many pages we're talking about, expected cost, etc. All of the normal considerations for burden balancing have been disregarded and instead the burden has been placed on Plaintiff to disprove a not-established burden. As a matter of law, a showing of disproportionate "burden cannot be met by 'a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.'" *McGrath*, 625 F. Supp. 2d at 670.

---

[6] Additionally, Heather Ryan (Director of the Office of Community Standards) testified in her deposition that Notre Dame *had not even asked her* to look for her personal notes from the Summer 2022 conduct proceedings. Even though these notes are responsive to numerous requests by Plaintiff. Notre Dame has repeatedly flaunted its discovery obligations and seeks to do so here by drawing an antithetical-to-caselaw line between records of females and records of males. **Exhibit 2**.

It simply does not make sense. At bottom, there is *no* legal basis for this Court to endorse Notre Dame's drama-less production of female records, but not of male records. Plaintiff cannot find, and neither Notre Dame nor the Magistrate Judge cites, a case upholding the partial disclosure of documents based on the subject's gender.

## IV. Conclusion

This Motion to Compel really comes down to one question: Why would it be okay to willingly and cooperatively produce TAMT records of one gender of students but claim irrelevance and disproportionate burden regarding the TAMT records of the other gender? The Magistrate Judge does not answer this question and instead improperly redefines the scope of what Plaintiff can ask for in discovery based on a failure to apply *Purdue Univ.*, limiting discovery according to *Notre Dame*'s theories of Plaintiff's case, and in inappropriately making factual findings on a Motion to Compel.

We are talking about approximately 37 pages of testified-to-as-easily-producible records of male students who, now based on personal knowledge gained through deposition testimony, have historically suffered penalties that TAMT has not subjected similarly accused females to.

There is no case law that Plaintiff can find, or that Notre Dame or Magistrate Judge Martin have cited, stating producing 37 pages is a legally sufficient disproportionate burden. There is no case law that Plaintiff can find, or that Notre Dame or Magistrate Judge Martin have cited, permitting the nondisclosure of records solely because they are records of a different gender of students. Plaintiff is not waging a fishing expedition that would expand this case—he simply wants the other half of what Notre Dame has already produced.

For the reasons set forth herein, and on the basis of the continuing evidence that arises as more information is learned against Notre Dame's justifications for its actions against Plaintiff in Fall 2021, Plaintiff respectfully urges this Court to compel Notre Dame to produce the TAMT

records of male students from 2014 forward—just as Notre Dame has already done for female students.

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, I sent via USPS Mail the foregoing document to be filed with the clerk of court and via email to the following counsel of record:

STEPHEN M. JUDGE
SOUTHBANK LEGAL
100 E Wayne Street, Suite 300
South Bend, IN 46601
Tel: 574-968-0760
sjudge@southbank.legal

*Attorney for the University of Notre Dame*

_____
Bryce Thomas Daniels

*Plaintiff pro se*

Date: June 13, 2025

Respectfully submitted,

_____
Bryce Thomas Daniels
5505 Seminary Rd.
Unit #317N
Falls Church, VA 22041
Tel: 214.909.2108
bryced@sas.upenn.edu

*Plaintiff pro se*